UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BENJAMIN LIPTON, A MINOR BY HIS GUARDIAN AD LITEM, STEVEN LIPTON AND STEVEN LIPTON AND TALIA LIPTON, INDIVIDUALLY,<br><br>Plaintiffs,<br><br>v.<br><br>MOUNTAIN CREEK RESORT, INC., AND/OR ABC CORP. 1-10, (FICTITIOUS CORPORATION WHOSE NAMES ARE NOT YET KNOWN) T/A MOUNTAIN CREEK, JOHN DOES 1-5 (FICTITIOUS PERSONS WHOSE NAMES ARE NOT YET KNOWN) AND JANE DOES 1-5 (FICTITIOUS PERSONS WHOSE NAMES ARE NOT YET KNOWN),<br><br>Defendants | Civ. No. 13-4866 (KM) (MAH)<br><br>OPINION |

## KEVIN MCNULTY, U.S.D.J.:

Before the Court is the motion for summary judgment (DE 58) of Defendant Mountain Creek Resort, Inc. ("Mountain Creek"). Mountain Creek also moves to exclude the testimony of Plaintiffs' liability expert, Richard Penniman. Mountain Creek contends that Penniman is not fit to testify because he failed to consider the New Jersey ski statute, N.J. Stat. Ann. § 5:13-1, *et seq.* (the "ski statute") when drafting his expert report. For lack of a qualified liability expert, Mountain Creek argues, it must be awarded summary judgment because the Plaintiffs will not be able to sustain their burden of proof. In the alternative, Mountain Creek argues that Benjamin Lipton assumed the inherent risks of skiing and that therefore Plaintiffs' claims cannot succeed.

On April 1, 2019, Plaintiffs submitted their opposition to Mountain Creek's motion for summary judgment and motion *in limine*. (DE 62) Mountain Creek did not file a reply.

For the reasons outlined herein, Mountain Creek's motion to exclude Mr. Penniman's testimony will be denied in part and granted in part. In particular, Mr. Penniman will be precluded from opining on the standards of New Jersey's ski statute. Mountain Creek's motion for summary judgment, however, is denied.

The ski statute requires the parties to negotiate a virtual slalom course of issues, pursuant to which liability may switch back and forth between them. Counsel are advised that, in preparation for trial, they should devote particular attention to the jury instructions and the verdict form, which will be necessary to channel the jury's deliberations.

## I. Facts[1]

Mountain Creek operates a ski resort located in Vernon, New Jersey. On January 25, 2013, Benjamin Lipton was skiing at Mountain Creek when he sustained severe injuries as a result of a collision. At the time, Mr. Lipton was thirteen years old and had been skiing for approximately ten years. (DE 62 at 31–32, ¶ 4)

It is undisputed that the incident occurred on a trail at Mountain Creek known as the "Big Bear trail." (DE 58-3 at 12, ¶ 4) The Big Bear trail is intended for experienced skiers. (*Id.*) The trail is rated as a black-diamond trail, signifying that it is considered a "most difficult rated trail" at Mountain Creek. (*Id.*)

---

[1] For ease of reference, certain key items from the docket will be abbreviated as follows:
    DE = docket entry number in this case;
    Compl. = Plaintiffs' complaint (DE 1);
    DBr = Mountain Creek's moving brief (DE 58-3);
    PBr = Plaintiffs' opposition brief (DE 62).

2

At approximately 7:55 pm, Mr. Lipton was skiing on Big Bear trail alone when he was observed by witnesses approaching an area of the trail where eight snowmaking tower guns and other snowmaking equipment were located. (DE 58-3 at 12–13, ¶ 5; DE 62 at 38, ¶ 5) Mr. Lipton was observed coming down a hill on the trail, at which point he skied over a snowbank and then came to a stop near the fourth snowmaking tower gun. Plaintiffs contend that the snowbank Mr. Lipton skied over was a "sudden, blind-drop off." (DE 62 at 35, ¶ 20)

The parties agree that Benjamin Lipton was found unconscious near the fourth snowmaking tower gun. Plaintiffs more specifically allege that he struck an unprotected "'metal pipe' which was 'sticking out of the ground.'" (DE 62 at 32, ¶ 8) Plaintiffs dispute the function of this metal pipe, questioning whether it was necessary for snowmaking purposes. (DE 62 at 24–26)

As a result of the incident, Benjamin Lipton sustained significant injuries, including severe brain and facial injuries.

On August 13, 2013, Plaintiffs filed a lawsuit against Mountain Creek. Mountain Creek, they allege, negligently failed to properly guard or warn against certain man-made hazards on the Big Bear trail and breached its duties under the New Jersey ski statute. (Compl. ¶ 4) As a result, the Liptons allege, Mountain Creek is liable for Plaintiffs' injuries. (*Id.*)

## II. Discussion

### A. New Jersey ski statute

The issues in both motions presume some background knowledge of New Jersey's ski statute.

The ski statute operates against a backdrop of common law negligence. "Actions against a ski operator for personal injuries sustained by a skier on its ski slope are governed by common-law negligence principles unless" the ski statute applies. *Brett v. Great Am. Recreation, Inc.*, 279 N.J. Super. 306, 314 (App. Div. 1995), *aff'd*, 144 N.J. 479 (1996) (citing *Reisman v. Great Am. Recreation, Inc.*, 266 N.J. Super. 87, 97 (App. Div. 1993)).

3

New Jersey's ski statute was enacted in 1979. "The purpose of this law is to make explicit a policy of this State which clearly defines the responsibility of ski area operators and skiers, recognizing that the sport of skiing and other ski area activities involve risks which must be borne by those who engage in such activities and which are essentially impractical or impossible for the ski area operator to eliminate. It is, therefore, the purpose of this act to state those risks which the skier voluntarily assumes for which there can be no recovery." N.J. Stat. Ann. § 5:13-1(b).

As a threshold matter, a court must determine whether the ski statute applies to the exclusion of the common law. Whether the statute permits liability turns on whether operators and skiers have complied with their statutory responsibilities. If, for example, it is determined that a skier was injured because she violated one or more statutory duties or is deemed to have assumed one or more of the stated risks of skiing, the ski statute applies, and liability is barred.

An "operator," such as Mountain Creek, is any "person or entity who owns, manages, controls or directs the operation of an area where individuals come to ski." *Id.* § 5:13-2(a). An operator is required, *inter alia,* to "[e]stablish and post a system generally identifying slopes and trails and designating relative degrees of difficulty thereof; and to make generally available to skiers information in the form of trail maps or trail reports" and "[r]emove as soon as practicable obvious, man-made hazards." *Id.* § 5:13-3(a)(3). A ski operator is expressly exempt from liability, however, for its failure to remove certain man-made hazards that are necessary for the normal operation of a ski resort:

> No operator shall be responsible to any skier or other person because of its failure to comply with any provisions of subsection 3.a. if such failure was caused by . . . the location of man-made facilities and equipment necessary for the ordinary operation of the ski area, such as transportation or grooming vehicles . . . or any other object or piece of equipment utilized in connection with the maintenance of trails, buildings or other facilities used in connection with skiing.

4

*Id.* § 5:13-3(b). However, if an operator "has knowledge of the failure to [remove man-made hazards]" or "should have reasonably known of such condition and having such knowledge has had a reasonable time in which to correct [the] condition," an operator can be found liable for a skier's injuries. *Id.* § 5:13–3(d). The ski statute also impliedly contemplates that a ski operator will inspect its slopes, "post suitable warnings of danger," and reduce the risk of harm to the extent practicable. *Brett*, 279 N.J. Super. 317; *Brough v. Hidden Valley, Inc.*, 312 N.J. Super. 139, 147 (App. Div. 1998).

A ski operator's statutory responsibilities do not extend to risks that are "inherent" in the sport. *Brough*, 312 N.J. Super. at 147; *Brett*, 677 A.2d at 715 ("In the skiing context, an inherent risk is one that cannot be removed through the exercise of due care if the sport is to be enjoyed."). It is the skier who "is deemed to have knowledge of and to assume the inherent risks of skiing." N.J. Stat. Ann. § 5:13–5. A skier's assumption of the risk is a complete defense. *Id.* § 5:13-6.

Nevertheless, "a skier is not barred from suing an operator based upon assumed risks or for injuries to which he contributed if the operator violated his duties or responsibilities under the [ski statute]." *Murray v. Great Gorge Resort, Inc.*, 360 N.J. Super. 395, 402, 823 A.2d 101, 105 (Law. Div. 2003) (citing *Assembly Judiciary, Law, Public Safety and Defense Committee, Statement to Assembly*, No. 1650 (Nov. 20, 1978)); *see also* N.J. Stat. Ann. § 5:13–6 ("The assumption of risk set forth in section 5 shall be a complete bar of suit . . . unless an operator has violated his duties or responsibilities under this act. . . ."). If it is shown that the ski operator violated its duties, a plaintiff may recover under principles of comparative negligence. N.J. Stat. Ann. § 5:13-6.

A skier likewise must abide by statutory duties. For example, "Every skier shall maintain control of his speed and course at all times, and shall stay clear of any snow grooming equipment, any vehicle, any lift tower, and any other equipment on the mountain." *Id.* § 5:13-4(c). "Each skier is assumed to

5

know the range of his ability, and it shall be the duty of each skier to conduct himself within the limits of such ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings and to refrain from acting in a manner which may cause or contribute to the injury of himself or others." *Id.* § 5:13-5. A minor must also "wear a securely fitted protective helmet." *Id.* § 5:13-12(a). "Failure to adhere to the duties set out in sections 4 and 5 shall bar suit against an operator to compensate for injuries resulting from skiing activities, where such failure is found to be a contributory factor in the resulting injury, unless the operator has violated his duties or responsibilities under the act," in which case a plaintiff may recover under comparative negligence principles. *Id.* § 5:13-6.

### B. Motion to Exclude Penniman Expert Testimony

On March 15, 2016, Plaintiffs served the report of liability expert Richard Penniman. Mr. Penniman has over thirty years of experience working in the ski industry as a ski patrol director, ski patroller, and director of skier services. (DE 62 at 33, ¶ 14) Mr. Penniman also has been a ski consultant whose "work includes trail safety and design, mountain operations management, and employee training." (DE 62-1 at 82)

Mountain Creek alleges that the opinions of Mr. Penniman must be barred because he fails to address the ski statute and therefore cannot opine on liability. (*Id.* at 10) Relying on *Butler v. Acme Markets, Inc.*, 89 N.J. 270, 283 (1982), Mountain Creek contends that New Jersey law requires expert testimony to prove liability where "a defendant owed the plaintiff a duty to exercise reasonable care." (DE 58-3 at 15–16) Once Penniman's testimony is excluded, Mountain Creek goes on to argue, the Plaintiffs cannot sustain their burden, so summary judgment must be awarded to the defendant.

#### 1. Legal Standards: Admissibility Under Rules 702 and 703

Federal Rule of Evidence 702 ("Rule 702") governs the admissibility of expert testimony. It provides certain prerequisites for the admission of expert testimony:

6

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Rule "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Qualification "refers to the requirement that the witness possess specialized expertise." *Id.*; *see Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) ("Rule 702 requires the witness to have specialized knowledge regarding the area of testimony." (internal quotation omitted)). This requirement is interpreted liberally: a "broad range of knowledge, skills, and training qualify an expert." *Waldorf*, 142 F.3d at 625; *see In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). This "liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." *Paoli*, 35 F.3d at 741. The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and ha[s] been satisfied with more generalized qualifications." *Id.* Exclusion of expert testimony is the exception rather than the rule because "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 580 (1993).

"Reliability" requires that the opinion be "based on 'the methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'" *Paoli*, 35 F.3d at 742 (citing *Daubert*, 509 U.S. at 590). Thus, "the expert must have 'good grounds' for his or her belief." *Id.* (quoting *Daubert*, 509

7

U.S. at 590). Reliability is a "flexible" test. *Kumho Tire*, 526 U.S. 137, 141 (1999)(internal citation omitted). Factors "deemed important" for determining reliability include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli*, 35 F.3d at 791 n.8; *see also Elcock v. Kmart Corp.*, 233 F.3d 734, 745–46 (3d Cir. 2000). These factors are not exclusive, nor must they all be applied in every case. *Kumho Tire*, 526 U.S. at 141; *Elcock*, 233 F.3d at 746. Rather, whether "specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire*, 526 U.S. at 153.

"Fit" requires that the expert opinion correspond to the issues in the case, *i.e.*, that it be relevant and "assist the trier of fact." *Paoli*, 35 F.3d at 742–43. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18). Therefore, "even if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge for purposes of the case." *Id.* at 743.

The burden of demonstrating admissibility under Rule 702 falls on the proponent: "The party offering the proposed expert testimony bears the burden of establishing the admissibility of the testimony by a preponderance of the evidence." *In re Human Tissue Products Liab. Litig.*, 582 F. Supp. 2d 644, 655 (D.N.J. 2008) (citing *Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 417–18 (3d Cir. 1999); *see also Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000) (quoting *Daubert*, 509 U.S. at 593 n.10). That inquiry requires the court to "examine the expert's conclusions in order to determine whether they could

reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).

The district court, exercising its sound discretion, serves as a gatekeeper to prevent expert testimony that falls short of these requirements from reaching the jury. *Daubert*, 509 U.S. at 592–95. Nevertheless, "[t]he Rule's basic standard of relevance . . . is a liberal one." *Id.* at 587. Within the principles outlined above, a judge has "the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142 (internal citation omitted) (emphasis in original).

Federal Rule of Evidence 703 ("Rule 703") sets forth the requirements relating to the underlying facts or data on which an expert may base his or her opinion. It provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

The Third Circuit announced in *In re Paoli* that "when a trial judge analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert." 35 F.3d at 749. In making that assessment, *Paoli* held, a trial judge has considerable latitude. The judge can "take into account the particular expert's opinion that experts reasonably rely on that type of data, as well as the opinions of other experts as to its reliability, but the judge can also take into account other factors he or she deems relevant." *Id.* at 748.

9

### 2. Analysis of motion to exclude Penniman testimony

Mountain Creek asserts that because Mr. Penniman's opinions do not address the ski statute, they are not reliable and do not "fit" the issues in this action, and therefore must be excluded.[2]

Concededly, Mr. Penniman's report does not address the ski statute or its standards. He testified that while he had not reviewed the ski statute prior to drafting his report, he had subsequently reviewed the statute, which did not change his opinion. Nevertheless, fairness requires that I preclude him from testifying as to ski statute issues. His report addresses other issues of relevance to the case, however.

Plaintiffs proffer Mr. Penniman as a liability expert, asserting that he is an industry expert on skiing safety and standards of care. He opined in his report that "the object(s) with which Mr. Lipton collided were not readily visible from his line of approach above the sudden, blind-drop-off, and they were not equipped with suitable impact protection devices or systems," including that the equipment lacked adequate padding. (DE 58-9 ¶ 5) Mr. Penniman also observed that "there were no barrier ropes or fences marking the sudden, blind drop-off above the obstacles or diverting traffic away," which he stated were "basic safety engineering principles." (Id. ¶¶ 6, 8) Therefore, it is his opinion that "there were no effective impact mitigation devices or systems up slope of the objects, nor any catch fences to prevent collision with them." (Id.)

Mr. Penniman also addressed in his report inherent risks of skiing and how to mitigate them:

> While some extrinsic obstacles in trails may be thought of as unnecessary for some reason, the hazard they present to skiers and snowboarders can be practically and affordably mitigated. Because common mitigation devices and systems rarely diminish the enjoyment or aesthetic appeal of recreational skiing and

---

[2] Mountain Creek does not expressly challenge Mr. Penniman's qualifications. The record sufficiently demonstrates that Mr. Penniman possesses a broad range of knowledge, skills, and training in the areas of ski patrolling, ski safety, and ski training to enable him to opine on ski industry safety practices and standards of care generally.

10

> snowboarding, sever injury from encounters and collisions wit unprotected obstacles cannot be considered "inherent."

(*Id.* ¶ 20) In his opinion, "[t]he potential for skiers and snowboarders to collide with and be seriously injured by encounters with the sudden, blind drop-off and the unprotected obstacle(s) below it on Big Bear trail was not an inherent risk of skiing." (*Id.* ¶ 7)

Therefore, Mr. Penniman opined, Mountain Creek "knew or should have known" about safety standards and should have ensured that these standards were followed "by removing or adequately warning customers of the sudden, blind drop-off and by protecting skiers from impact injury with the object (s) encountered by [Benjamin] Lipton on the Big Bear trail." (*Id.* at 14–15) In Mr. Penniman's opinion, Mountain Creek "failed to adequately warn of the sudden, blind drop-off and to protect skiers from potential impact with the obstacle(s) below on the Big Bear trail by using practical, reasonable, effective, and affordable padding, screening, and/or shielding technology," which "created an unnecessary unreasonable, and unsafe condition" that ultimately resulted in Plaintiffs' injuries. (*Id.*)

Mountain Creek argues that Mr. Penniman's testimony is legally irrelevant and unreliable because he cannot "provide testimony based upon the relevant [ski] statute and standard of care," (DE 58-3 at 18–19), and because Mr. Penniman was not aware of the "mandatory ski helmet law in place for minors" under the ski statute (*Id.* at 21)

Plaintiffs counter that Mr. Penniman's opinions contained in his report and testimony have a connection to the relevant facts because he reviewed the evidence in this case to identify hazards that were positioned on the Big Bear trail and determined that Mountain Creek's warnings were not effective. Plaintiffs thus contend that Mr. Penniman's opinions are relevant because "without effective warning or impact mitigation devices . . . the protections that would be afforded to Mountain Creek by the ski statute" no longer apply. (DE

62 at 11). Plaintiffs also counter that Mr. Penniman's opinions are relevant because he discusses risks that are inherent to skiing.

I hold that Mr. Penniman's opinions are not wholly excludable merely because he did not review or mention the ski statute when drafting his report. To begin with, interpretation of the meaning of the ski statute itself would not be a proper subject of expert testimony in any event. "The meaning of terms in a statute or regulation or the application of such terms to specified conduct are not subjects for expert opinion or testimony." *Rich v. Bailey*, No. CIV. A. 95-6932, 1996 WL 745298, at *5 (E.D. Pa. Dec. 23, 1996), *aff'd*, 135 F.3d 766 (3d Cir. 1997) (internal citations omitted); *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008) ("The 'expert' would have testified about the meaning of the statute and regulations. That's a subject for the court, not for testimonial experts."); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006) ("[T]estimony as to the legal effect of the various SEC pronouncements regarding Rule 144 and Regulation S, are inadmissible as improper legal opinions."); *Dalgic v. Misericordia Univ.*, No. 3:16-CV-0443, 2019 WL 2867236, at *12 (M.D. Pa. July 3, 2019)(expert "testimony concerning his understanding of the applicable federal regulations is also not a subject for which expert testimony is proper").

Still, the court generally will not permit an expert to testify beyond the scope of his or her report. Under Federal Rule of Civil Procedure 26(a)(2), a party is required to disclose an expert report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). A party cannot rely on an expert opinion that was not disclosed in the expert report unless the failure is substantially justified or harmless. Fed. R. Civ. P 26(a)(2)(B) and 37(c)(1). "Not disclosing the expert's opinion during discovery is not harmless . . . Not disclosing the opinion during expert discovery prevented [defendant] from cross examining the expert on this point." *Grant St. Grp., Inc. v. Realauction.com, LLC*, No. 2:09-CV-01407-DWA, 2012 WL 1440604, at *1 (W.D. Pa. Feb. 23, 2012), *report and recommendation*

*adopted*, No. CIV.A. 9-1407, 2012 WL 1436633 (W.D. Pa. Apr. 25, 2012). Here, there is no justification for a liability expert to fail to address in his report the very ski statute under which Plaintiffs are seeking to hold Mountain Creek liable.

That said, the Third Circuit has emphasized that wholesale exclusion of expert testimony is an extreme measure. *See, e.g., Paoli*, 35 F.3d at 791–92. I will not strike the report as a whole because it is still relevant to some issues in the case.

Mr. Penniman will be permitted to offer opinions, including opinions on industry standards of care and safety standards. I find that this testimony will assist the jury in assessing the underlying conduct of the parties in this action as this conduct relates to liability. But the Penniman testimony, while it may illuminate the background negligence principles that govern the case, cannot embrace the ultimate issue of liability, which (depending on the facts) may be wholly or partly barred by the ski statute. Mr. Penniman will not be permitted to testify as to whether the facts of this case conform to the standards of care under the ski statute.

## C. Whether complete or partial exclusion of expert testimony requires dismissal

An important premise of Mountain Creek's argument is that the exclusion of Penniman's opinion testimony requires dismissal of the case. Before proceeding to the merits of the summary judgment motion, I address that issue separately here.

Under New Jersey law,[3] to state a claim for negligence, a plaintiff must allege the following four elements: "'(1) a duty of care, (2) a breach of that duty,

---

[3] No substantial choice of law issue is presented. "[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The parties do not dispute that in this diversity tort action, based on an accident in New Jersey, New Jersey law applies. *See, e.g., McCarrell v. Hoffmann-La Roche, Inc.*, 227 N.J. 569, 590 (2017) ("[I]n a personal-injury action, the substantive law of the

13

(3) proximate cause, and (4) actual damages.'" *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (quoting *Polzo v. Cty. of Essex*, 196 N.J. 569, 584 (2008)). Mountain Creek argues that the action must be dismissed because neither the standard of care nor proximate causation can be established without expert testimony, and Mr. Penniman's report, particularly as limited (*see supra*), fails to address those issues.

As to the standard of care, *Butler v. Acme Markets, Inc.*, 89 N.J. 270 (1982), does not support Mountain Creek's position as to the necessity of an expert. *Butler* holds that "except for malpractice cases, there is no general rule or policy requiring expert testimony as to the standard of care." *Id.* at 283. "Generally, in tort actions, expert testimony is indispensable only when the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment about it." *J.W. v. L.R.*, 325 N.J. Super. 543, 547 (App. Div. 1999) (citing *Butler*, 89 N.J. at 283). This, I find, is not such a case. The expert testimony will establish general principles of negligence and the court will instruct the jury regarding the ski statute's limitations on liability.

As to the issue of proximate causation, there is likewise no rigid requirement of expert testimony. While such testimony may aid a jury, and while its use is encouraged, its absence is not fatal. Here, the nature of the alleged harm is not so esoteric that lay jurors, properly instructed as to the law (including the ski statute) will not be able to render a decision on causation without the aid of expert opinion testimony.

Mr. Penniman's opinion testimony will be limited; it will not be excluded. Mountain Creek's motion is denied insofar as it seeks a ruling that expert testimony is required for Plaintiffs to prove each element of their negligence and ski statute claims.

---

place of injury is presumed to be the governing law under section 146" of the Restatement (Second). "Absent another state having a more significant relationship, the substantive law of the injury-site state applies.").

14

### D. Mountain Creek's Motion for Summary Judgment
#### 1. Legal standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322-23. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist).

Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 111 L. Ed. 2d 695, 110 S. Ct. 3177 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations

of an affidavit."); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48. A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### 2. Analysis

As outlined in more detail above, the New Jersey ski statute balances the immunity granted to ski area operators against an operator's duty to warn skiers of snowmaking or grooming activities. Thus it denies immunity to ski area operators who breach certain safety responsibilities: "If the factfinder finds that the injuries were proximately caused by the ski operator's violation of one or more of its statutory responsibilities, the skier is entitled to recover under principles of comparative negligence." *Brett*, 279 N.J. Super. at 315. *See* N.J. Stat. Ann. §§ 5:13-3(b), 5:13-6. On the other hand, if a skier is found to have violated one or more of its statutory duties, the skier is deemed to have contributed to the injury, and the ski statute may apply and require application of comparative fault principles. *See* section II.A, *supra*.

16

Mountain Creek contends that the snowmaking equipment with which Benjamin Lipton collided with was "open, obvious and marked." (*Id.*) Such a risk, says Mountain Creek, is specifically enumerated in the ski statute; Mr. Lipton was on notice of and is deemed to have assumed the risk of such accidents when he elected to ski on Big Bear trail. (DE 58-3 at 29–30) Mountain Creek also points to the ski statute's imposition of certain duties on skiers. Mr. Lipton, it says, violated the skier's responsibility code by failing to "maintain control of his speed and course at all times" and failing to "stay clear of . . . any other equipment on the mountain." (DE 58-3 at 31–32)[4] Mountain Creek also questions whether Mr. Lipton was wearing a "securely fitted" helmet and whether the helmet had been damaged. (DE 58-3 at 21; DE 58-12 at 2)

Mountain Creek attaches its own expert reports to the motion. Liability expert Mark St. J. Petrozzi concludes that the injuries were caused by Lipton's failure to maintain control of his speed and course prior to the accident. (DE 58-10) He also opines that Mr. Lipton had skied through "open, obvious, visible

---

[4]    It is worth noting that Mountain Creek cites to several cases where various courts applying the ski statutes of Pennsylvania and New Hampshire found that ski operators did not owe a duty to protect skiers from inherent risks. (DE 58-3 at 32–36) These cases are factually and legally distinguishable.

For example, Mountain Creek cites to *Smith v. Seven Springs Farm, Inc.*, 716 F.2d 1002 (3d Cir. 1983) which applied Pennsylvania's ski statute. Unlike here, the record in *Smith* confirmed that the plaintiff subjectively appreciated the risks of skiing and voluntarily chose to confront them as the plaintiff knew before heading down the at issue trail that people ahead of him were having trouble negotiating the trail's steep icy slope, and that unprotected telephone-like poles that were part of the resort's snowmaking apparatus were present on the trail. *Smith*, 716 F.2d at 1009. Moreover, the Pennsylvania and New Hampshire ski statutes are materially distinct from New Jersey's ski statute. Unlike Pennsylvania's and New Hampshire's statutes, which explicitly retained the defense of a skier's assumption of the risk, the New Jersey statute balances the immunity granted to ski area operators with an operator's duty to warn skiers of snowmaking or grooming activities by denying immunity to ski area operators who breach certain safety responsibility. *Compare* N.J. Stat. Ann. § 5:13-3(b) with § 5:13-6. For this reason, cases interpreting Pennsylvania or New Hampshire law are not controlling here. (DE 58-3 at 32–36) (citing *Rayeski v. Gunstock Area/Gunstock Area Comm'n*, 146 N.H. 495, 497 (2001); *Coyle v. Camelback Mountain Ski Resort*, 2017 WL 4621786 (M.D. Pa. Oct. 16, 2017); *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263 (3d Cir. 2008); *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1174 (2010)).

17

and appropriately marked" warnings prior to colliding with the snowmaking equipment, and that, having skied this trail previously, Lipton should have been particularly aware of these warnings. (*Id.*) Accident reconstruction and biomechanical engineering expert Irving S. Scher, Ph.D., P.E., concludes that Mr. Lipton's helmet was out of position at the time of the incident and also had signs of prior impact, indicating that it was damaged and should no longer have been worn. (DE 58-13; DE 58-14 at 2)

Plaintiffs dispute that Mountain Creek complied with its duties to adequately warn or remove the man-made hazards created by the "sudden, blind drop-off" on Big Bear trail that resulted in Mr. Lipton's striking a "rigid steel object." (DE 62 at 21–22) Plaintiffs also assert that Mr. Lipton's head hit an unprotected metal pipe and dispute the function of the pipe, pointing to the lack of expert testimony that the pipe had anything to do with snowmaking. (*Id.* at 24–26) According to Plaintiffs, genuine material issues of fact thus remain as to whether the metal pipe qualifies as an "inherent risk" (*id.* at 26) and whether Mountain Creek should have reasonably known of such condition and used practical and reasonable padding, screening, and/or shielding to remedy this "unreasonable and unsafe condition." (*Id.* at 22) Moreover, Plaintiffs assert that collision with snowmaking equipment hidden by a "sudden, blind drop-off" is not an inherent risk of skiing. (*Id.* at 23)

"In the skiing context, an inherent risk is one that cannot be removed through the exercise of due care if the sport is to be enjoyed." *Brett*, 144 N.J. at 499. "A danger that may feasibly be removed, however, is not an inherent danger." *Id.* at 500–501, 677 A.2d 705; *see, e.g., Pietruska v. Craigmeur Ski Area*, 259 N.J. Super. 532, 537, 614 A.2d 639 (Law Div.1992) ("Improper operation of a ski lift is not an inherent risk of skiing since, with due care, it can be eliminated."). The question of whether a hazard is obvious is one for the jury. *Brett*, 677 A.2d at 71.

In light of the available evidence, there are factual disputes as to the purpose of the pipe located near the snowmaking equipment and whether it

18

was concealed by a "blind drop-off." A reasonable jury may conclude under the circumstances that the location of an unprotected metal pipe near snowmaking equipment was an obvious, man-made hazard that Mountain Creek had a duty to remediate by, for instance, placing a protective cover on the pipe. N.J. Stat. Ann. § 5:13–3a(3); see Brett, 144 N.J. at 505 ("[T]he trial court properly left to the jury the question of whether an obvious, man-made hazard existed, given the fact-intensive nature of this issue and its relation to the balancing of fault."); see also Brough, 312 N.J.Super. at 146–47 (jury to decide if man-made, concrete box located off ski trail was inherent risk that skier must assume or a hazard that ski operator had a duty to remove or reduce). Likewise, the record raises a material dispute as to whether Mr. Lipton complied with his duties under the ski statute to conduct himself within the limits of his individual ability, was maintaining proper control of his speed, and was properly wearing a properly functioning helmet that was in good repair. N.J. Stat. Ann. § 5:13-4. Accordingly, Mountain Creek's motion for summary judgment is denied.

### III. Conclusion

For the reasons set forth above, Mountain Creek's motion for summary judgment (DE 58) is **DENIED**. Mountain Creek's motion to exclude the expert testimony of Richard Penniman (DE 58) is **DENIED IN PART AND GRANTED IN PART**. An appropriate order follows.

Dated: September 23, 2019

_____
Kevin McNulty
**United States District Judge**